UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ONISIM DORNEANU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| THE TRUMP ORGANIZATION, INC., | ) |
| 401 NORTH WABASH VENTURE LLC, | ) |
| and EDWARD MARTIN, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, Onisim "Nick" Dorneanu, by and through his undersigned counsel, as and for his Complaint against Defendants, The Trump Organization, Inc. ("Trump Inc."), 401 North Wabash Venture LLC ("401 North Wabash"), and Edward Martin, alleges as follows.

**PARTIES, JURISDICTION AND VENUE**

1. Mr. Dorneanu is an individual who resides in Oregon, Wisconsin.

2. Trump Inc. is a New York corporation with its principal place of business in New York, New York. Trump Inc. is an entity capable of holding a legal or beneficial interest in property.

3. 401 North Wabash is a Delaware limited liability company that maintains its principal place of business in Chicago, Illinois. 401 North Wabash is an entity capable of holding a legal or beneficial interest in property. On information and belief, the

ultimate member is The Donald J. Trump Revocable Trust dated April 7, 2014, but 401 North Wabash is not a subsidiary of Trump Inc.

4. Mr. Martin is an individual who, on information and belief, resides in Green Bay, Wisconsin.

5. This action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1 *et seq.* (the "Consumer Fraud Act"), and Illinois common law. This Court has jurisdiction over the RICO claim pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Consumer Fraud Act and Illinois common law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal statutory claim that they form part of the same case or controversy.

6. This Court has personal jurisdiction over Trump Inc. because it conducts business in this judicial district.

7. This Court has personal jurisdiction over 401 North Wabash because it conducts business in this judicial district.

8. This court has personal jurisdiction over Mr. Martin because he owns property and conducts business, including business related to the specific subject matter of this action, in this judicial district.

9. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Dorneanu's claims occurred in this judicial district.

**FACTS**

10. Trump International Hotel & Tower Chicago ("Trump Tower Chicago"), which 401 North Wabash developed, is a skyscraper located at 401 North Wabash Avenue in Chicago, Illinois. Trump Tower Chicago is comprised of 486 private condominium residences, a 339-room hotel, a health club, a spa, public and private parking garages, and various other commercial and common use spaces.

11. The hotel at Trump Tower Chicago operates as the 401 North Wabash Avenue Hotel Condominium Association (the "Association"). Each of the hotel's rooms is a condominium unit. Individual investors, including Mr. Dorneanu, own approximately 190 of the hotel condominium units, and 401 North Wabash owns the rest.

12. Trump Chicago Hotel Manager, LLC (the "Hotel Manager") operates the hotel pursuant to a Hotel Condominium Rental Management Agreement (the "RMA") and a Hotel Condominium Unit Maintentance Agreement (the "UMA") with the owner of each room, and pursuant to a Hotel Management Agreement (the "HMA") with the Association.

13. On information and belief, the ultimate member of the Hotel Manager is The Donald J. Trump Revocable Trust dated April 7, 2014.

14. The owner of a hotel room realizes a profit in a given month—before accounting for property taxes and mortgage payments—if the revenue that the Hotel Manager collects from booking that room exceeds the fixed and marginal operating expenses that the Hotel Manager allocates to the room, both directly to the owner, pursuant to the RMA and CMA, and indirectly through the Association, pursuant to the

HMA. The owner sustains a loss in a given month if the fixed and marginal operating costs for that month exceed the revenue from bookings.

15. Mr. Dorneanu owns twelve hotel condominium units, as well as four residential condominium units and three parking stalls, at Trump Tower Chicago. Mr. Dorneanu typically lives in one of his residential units two or three days per week.

16. Mr. Dorneanu purchased those units from their previous owners between 2019 and 2022. Mr. Dorneanu did not buy any units directly from 401 North Wabash.

17. In March 2023, Mr. Dorneanu joined the board of directors of the Association (the "Board"). In his role as a director, Mr. Dorneanu became increasingly concerned over the Association's poor financial condition, the high frequency with which he and the other individual investors sustained monthly losses, and the Hotel Manager's lack of transparency regarding its operations and its expenditures.

18. During the Board's meetings, Mr. Dorneanu expressed his concerns that the Hotel Manager was operating the hotel to the financial benefit of itself 401 North Wabash at the expense of the individual investors, including by misallocating funds, concealing financial information, misrepresenting expenses, and booking the rooms that 401 North Wabash owned at a significantly higher occupancy rate than the rooms that individual investors owned. The Hotel Manager summarily dismissed Mr. Dorneanu's concerns and refused to disclose any documentation that might have shown his concerns were unfounded.

19. Mr. Martin, who was the President of the Board, also dismissed Mr. Dorneanu's concerns. Mr. Martin owns one hotel condominium unit at Trump Tower

Chicago. In addition, he is the owner and CEO of H.J. Martin and Son, Inc., a flooring company with its principal place of business located in Green Bay, Wisconsin. On information and belief, because the flooring company has a lucrative business relationship with the Hotel Manager, Mr. Martin's personal financial interest in that relationship outweighs his personal financial interest in his hotel condominium unit.

20. Between late 2023 and early 2024, employees of the Hotel Manager and an employee of a vendor of the Hotel Manager informed Mr. Dorneanu that, on numerous occasions, they had witnessed high-level employees of the Hotel Manager misappropriating the Association's and the room owners' funds and property for their personal use.

21. On May 22, 2024, Mr. Dorneanu sent an email to his fellow directors in which he proposed that the Board take a more proactive approach to overseeing the Hotel Manager.

22. In response, Mr. Martin sent Mr. Dorneanu an email on May 23, 2024, in which Mr. Martin stated, falsely, that the Board had no right to exercise any supervisory authority over the Hotel Manager, purportedly because the Hotel Manager acted only on behalf of the room owners, pursuant to the RMA, and not on behalf of the Association. This statement was fraudulent or, at the very least, grossly negligent in that Mr. Martin knew or should have known it to be false.

23. In late May 2024, Mr. Dorneanu contacted executives of Trump Inc. to relay his concerns to them regarding the Hotel Manager's misconduct.

24. In early June 2024, representatives of Trump Inc. travelled to Chicago, purportedly to conduct a thorough onsite investigation into Mr. Dorneanu's concerns.

25. On June 27, 2024, Mark Hawthorn, an executive of Trump Inc., sent an email to Mr. Dorneanu in which he wrote that Trump Inc. had completed its investigation. Mr. Hawthorn stated, falsely, that Mr. Dorneanu's concerns were "irrefutably not supported by facts." Mr. Dorneanu knew this was untrue. The "investigation" had really been a cover-up.

26. Trump Inc. and its individual executives attempted to conceal the Hotel Manager's misconduct from Mr. Dorneanu because the Hotel Manager was operating the hotel to the financial benefit of itself and 401 North Wabash at the expense of the individual investors.

27. On August 14, 2024, Jill Martin, an executive of Trump Inc., sent an email to Mr. Dorneanu reiterating the false statement that Mr. Dorneanu's concerns regarding the Hotel Manager's misconduct were baseless, demanding that he cease and desist from investigating such misconduct in his capacity as a director, and threatening to pursue legal action against him.

28. On August 15, 2024, Mr. Dorneanu sent an email to Mr. Martin in which he expressed specific concerns that the Hotel Manager was improperly transferring funds from the Association's reserve accounts to the hotel's operating account, to the financial benefit of itself and 401 North Wabash at the expense of the individual investors.

29. In response, Edward Martin sent Mr. Dorneanu an email on August 16, 2024, in which he stated, "I am not aware of any inappropriate activities due to

accounting." This statement was fraudulent or, at the very least, grossly negligent in that Mr. Martin either was aware or should have been aware of such activities.

30. On August 17, 2024, Jill Martin sent an email to Mr. Dorneanu in which she told him, falsely, that the Board had no right to exercise supervisory authority over the Hotel Manager.

31. On August 22, 2024, Mr. Dorneanu resigned from the Board.

32. On August 30, 2024, Matthew Brotschul, an attorney representing 401 North Wabash, sent Mr. Dorneanu a letter by email in which he demanded that Mr. Dorneanu cease and desist from investigating the misconduct of the Hotel Manager. Mr. Brotschul stated, falsely, that Mr. Dorneanu had admitted in writing that his motivation was "not at all to address any legitimate business concerns, but rather, to seek retribution against certain individuals." In addition, Mr. Brotschul threatened that if Mr. Dorneanu did not comply, 401 North Wabash would prohibit him from using the spa, health club, and other commercial spaces at Trump Tower Chicago, for which Mr. Dorneanu paid substantial monthly assessments to use.

33. On November 21, 2024, Howard Dakoff, an attorney representing the Association, sent Mr. Dorneanu a letter threatening to pursue legal action against him because Mr. Dorneanu had purportedly violated the Declaration of the Association by owning more than ten hotel condominium units.

34. Also on November 21, 2024, Mr. Brotschul sent Mr. Dorneanu a letter informing him 401 North Wabash had decided to prohibit him from using the spa, health club, and other commercial spaces at Trump Tower Chicago.

35. On the evening of February 2, 2025, Mr. Dorneanu used the steam room in the spa at Trump Tower Chicago. When Mr. Dorneanu was in the steam room, an employee of the Hotel Manager came to the door and asked Mr. Dorneanu to leave. Mr. Dorneanu declined. Moments later, Chicago Police Department officers entered the spa and arrested Mr. Dorneanu for criminal trespass, perp-walking him through the lobby of the hotel in handcuffs and taking him to jail, where he stayed overnight.

36. As a result of Trump Inc.'s, 401 North Wabash's, and the Hotel Manager's retaliation and intimidation campaign against him, Mr. Dorneanu has been left with no choice but to sell his units at Trump Tower Chicago, the first of which he listed for sale on March 5, 2025.

**COUNT I**
**VIOLATION OF 18 U.S.C. § 1962(C)**
**AGAINST TRUMP INC., 401 NORTH WABASH VENTURE, AND MR. MARTIN**

37. Mr. Dorneanu repeats and realleges, as if set forth herein, the allegations of all of the preceding paragraphs of this Complaint.

38. Trump Inc., 401 North Wabash Venture, and Mr. Martin, along with the Hotel Manager, formed an association-in-fact enterprise (the "Enterprise") for the purpose of operating the hotel to the financial benefit of the Hotel Manager and 401 North Wabash at the expense of the individual investors, to attempt to conceal that misconduct, and to retaliate against Mr. Dorneanu and attempt to intimidate him into silence.

39. The Enterprise engages in interstate commerce, and its activities affect interstate commerce. Specifically: the individual investors who own hotel condominium units reside in Illinois and in various other states, including Wisconsin; the hotel caters

to guests who travel to Chicago from across the United States and around the world; and Trump Inc., 401 North Wabash, and Mr. Martin have their principal places of business or residences in New York, Illinois, and Wisconsin, respectively.

40. Trump Inc., 401 North Wabash Venture, and Mr. Martin, along with the Hotel Manager, agreed to and did conduct and participate in the Enterprise through a pattern of racketeering activity for the unlawful purpose of defrauding Mr. Dorneanu and the other individual investors in the hotel condominium units. The Hotel Manager operated the hotel to the financial benefit of itself and 401 North Wabash at the expense of the individual investors, including by misallocating funds, concealing financial information, misrepresenting expenses, and booking the rooms that 401 North Wabash owned at a significantly higher occupancy rate than the rooms that individual investors owned.

41. When Mr. Dorneanu reported his concerns to Trump Inc., it conducted a sham investigation and then misrepresented to Mr. Dorneanu that his concerns were baseless. After that misrepresentation failed to deter Mr. Dorneanu, Trump Inc., the Association, and 401 North Wabash each threatened legal action against him, and 401 North Wabash warned him against using common facilities—for which he paid handsomely—and then had him arrested when he attempted to use those facilities, all to retaliate against and try to intimidate Mr. Dorneanu.

42. Pursuant to and in furtherance of their fraudulent scheme, Trump Inc., 401 North Wabash, and Mr. Martin committed multiple acts of wire fraud, in violation of 18 U.S.C. § 1343, because (1) the Enterprise executed a scheme to defraud individual

investors in the hotel condominium units by operating the hotel to the financial benefit of the Hotel Manager and 401 North Wabash at the expense of the individual investors, (2) the Enterprise intended to defraud the individual investors, (3) it was reasonably foreseeable to the Enterprise that it would use the wires in executing its scheme, and (4) the Enterprise did use the wires in executing its scheme.

43. Trump Inc.'s, 401 North Wabash's, and Mr. Martin's acts of wire fraud in furtherance of the Enterprise's scheme to defraud individual investors included, but were not limited to, the following:

    a. On May 23, 2024, Mr. Martin sent an email to Mr. Dorneanu in which he stated, falsely, that the Board had no right to exercise any supervisory authority over the Hotel Manager, purportedly because the Hotel Manager acted only on behalf of the room owners, pursuant to the RMA, and not on behalf of the Association.

    b. On June 27, 2024, Mark Hawthorn, acting on behalf of Trump Inc., sent an email to Mr. Dorneanu in which he wrote that Trump Inc. had completed its investigation and stated falsely that Mr. Dorneanu's concerns were "irrefutably not supported by facts."

    c. On August 14, 2024, Jill Martin, acting on behalf of Trump Inc., sent an email to Mr. Dorneanu reiterating the false statement that Mr. Dorneanu's concerns regarding the Hotel Manager's misconduct were baseless, demanding that he cease and desist from investigating such misconduct in his capacity as a director, and threatening legal action against him.

d. On August 17, 2024, Ms. Martin, acting on behalf of Trump Inc., sent an email to Mr. Dorneanu in which she told him, falsely, that the Board had no right to exercise any supervisory authority over the Hotel Manager.

e. On August 30, 2024, Mr. Brotschul, acting on behalf 401 North Wabash, sent Mr. Dorneanu a letter by email in which he demanded that Mr. Dorneanu cease and desist from investigating the misconduct of the Hotel Manager, stated falsely that Mr. Dorneanu had admitted in writing that his motivation was "not at all to address any legitimate business concerns, but rather, to seek retribution against certain individuals," and threatened that if Mr. Dorneanu did not comply, 401 North Wabash would prohibit him from using the commercial spaces at Trump Tower Chicago.

f. Between 2019 and the present, the Hotel Manager sent Mr. Dorneanu by email monthly financial statements for each of his hotel condominium units, reflecting either a balance due to Mr. Dorneanu or—more often—a balance due to the Hotel Manager. Because each of these financial statements was based on fraudulent accounting that benefitted the Hotel Manager and 401 North Wabash at the expense of the individual investors, each transmission of a financial statement constituted an act of wire fraud in violation of 18 U.S.C. § 1343.

44. These acts of wire fraud constitute a pattern of racketeering activity under 18 U.S.C. § 1961(5).

45. Trump Inc., 401 North Wabash Venture, and Mr. Martin have directly or indirectly conducted and participated in the Enterprise's affairs through this pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

46. As a direct and proximate result of Trump Inc.'s, 401 North Wabash Venture's, and Mr. Martin's racketeering activities and violations of 18 U.S.C. § 1962(c), Mr. Dorneanu has sustained at least the following damages:

    a. Lost profits and excess losses from his ownership of the hotel condominium units, in an amount to be proven at trial;

    b. Diminution in the resale values of his hotel condominium units, in an amount to be proven at trial; and

    c. the transactional costs of selling, due to the retaliation and intimidation campaign against him, all of his hotel and residential condominium units at Trump Tower Chicago, in an amount to be proven at trial.

**COUNT II**
**VIOLATION OF 815 ILCS § 505/2**
**AGAINST TRUMP INC. AND 401 NORTH WABASH VENTURE**

47. Mr. Dorneanu repeats and realleges, as if set forth herein, the allegations of all of the preceding paragraphs of this Complaint.

48. Trump Inc. and 401 North Wabash Venture engaged in the deceptive act of conspiring with the Hotel Manager to operate the hotel to the financial benefit of the Hotel Manager and 401 North Wabash at the expense of the individual investors, including by misallocating funds, concealing financial information, misrepresenting

expenses, and booking the rooms that 401 North Wabash owned at a significantly higher occupancy rate than the rooms that individual investors owned.

49. After Mr. Dorneanu expressed concerns that the Hotel Manager was operating the hotel to the financial benefit of itself and 401 North Wabash at the expense of the individual investors, Trump Inc. and 401 North Wabash Venture engaged in the additional deceptive acts of conducting a sham investigation of the Hotel Manager, misrepresenting to Mr. Dorneanu, based on the results of the "investigation," that his concerns were baseless, and misrepresenting to Mr. Dorneanu that the Board had no right to exercise supervisory authority over the Hotel Manager.

50. Trump Inc. and 401 North Wabash Venture intended that Mr. Dorneanu would rely on their deception.

51. Trump Inc. and 401 North Wabash Venture engaged in their deceptive acts in the course of commerce in Illinois.

52. As a direct and proximate result of Trump Inc.'s and 401 North Wabash Venture's deceptive acts in violation of 815 ILCS § 505/2, Mr. Dorneanu has sustained at least the following damages:

    a. Lost profits and excess losses from his ownership of the hotel condominium units, in an amount to be proven at trial;

    b. Diminution in the resale values of his hotel condominium units, in an amount to be proven at trial; and

    c.    the transactional costs of selling, due to the retaliation and intimidation campaign against him, all of his hotel and residential condominium units at Trump Tower Chicago, in an amount to be proven at trial.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTION DISTRESS
## AGAINST TRUMP INC. AND 401 NORTH WABASH VENTURE

53.    Mr. Dorneanu repeats and realleges, as if set forth herein, the allegations of all of the preceding paragraphs of this Complaint.

54.    Trump Inc.'s and 401 North Wabash Venture's retaliation and intimidation campaign against Mr. Dorneanu, in particular having him arrested for criminal trespass at the spa he paid handsomely to use, on February 2, 2025, was extreme and outrageous.

55.    Trump Inc. and 401 North Wabash Venture intended for their retaliation and intimidation campaign against Mr. Dorneanu, in particular having him arrested at the spa, to inflict severe emotional distress on Mr. Dorneanu.

56.    Trump Inc.'s and 401 North Wabash Venture's retaliation and intimidation campaign against Mr. Dorneanu, in particular having him arrested at the spa, caused him severe emotional distress.

57.    As a direct and proximate result of Trump Inc.'s and 401 North Wabash Venture's retaliation and intimidation campaign against Mr. Dorneanu, in particular having him arrested at the spa, he has sustained damages for emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Dorneanu respectfully requests that this Court enter judgment in his favor and against Trump Inc., 401 North Wabash, and Mr. Martin as follows:

1. On Count I, awarding Mr. Dorneanu compensatory damages in an amount to be proven at trial;

2. On Count I, awarding Mr. Dorneanu treble damages pursuant to 18 U.S.C. § 1964(c);

3. On Count I, awarding Mr. Dorneanu his costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

4. On Count II, awarding Mr. Dorneanu compensatory damages in an amount to be proven at trial;

5. On Count II, awarding Mr. Dorneanu punitive damages;

6. On Count II, awarding Mr. Dorneanu his costs and reasonable attorneys' fees pursuant to 815 ILCS § 505/10a(c);

7. On Count III, awarding Mr. Dorneanu compensatory damages in an amount to be proven at trial;

8. On Count III, awarding Mr. Dorneanu punitive damages;

9. awarding Mr. Dorneanu pre-judgment and post-judgment interest; and

10. awarding Mr. Dorneanu such other and further relief as the Court may deem just and equitable.

Date: March 18, 2025	Respectfully submitted,

*s/ Alexander R. Hess*
Alexander R. Hess
West & Dunn, LLC
207 West Main Street
P.O. Box 37
Waunakee, Wisconsin 53597
Telephone: (608) 535-6420
Email: ahess@westdunn.com

*Counsel for Plaintiff, Onisim Dorneanu*